**BETTER BRANDS OF N.Y., INC. and Consolidated Beverage Corp., Plaintiffs,**

v.

**PABST BREWING COMPANY, Defendant.**

**No. 00 CIV. 0469 (JSR).**

United States District Court, S.D. New York.

Aug. 3, 2000.

Ettelman and Hochheiser, P.C. (Gary Ettelman), Garden City, NY, for Plaintiffs.

LeBoeuf, Lamb, Greene and MacRae, L.L.P. (Patrick Joseph Gennardo and Charles C. Platt), New York City, for Defendant.

### MEMORANDUM ORDER

RAKOFF, District Judge.

Plaintiffs having consented in open court to the dismissal of their breach of contract and wrongful termination claims, *see* transcript of oral argument, 7/12/00 ("tr."), there remains for discussion only plaintiffs' statutory claim under § 55–c of New York's Alcoholic Beverage Control Law, N.Y. Alcoholic Beverage Control Law § 55–c (McKinney 2000), as to which both sides have moved for summary judgment. Upon consideration, the Court grants defendant's motion and denies plaintiffs' motion.

Construing the record most favorably to plaintiffs, the pertinent facts are that in 1985 defendant Pabst Brewing Company ("Pabst") agreed with Albert Thompson, the sole proprietor of plaintiff Consolidated Beverage Corp. ("Consolidated"), that Consolidated would be Pabst's "master wholesaler" throughout New York State. Under this arrangement, Consolidated, and, after January 1998 its successor for this purpose, co-plaintiff Better Brands of N.Y., Inc. ("Better Brands"), marketed and promoted Pabst products to retailers and others, who then placed orders for Pabst products with beer distributors. The distributors in turn sent the invoices for the orders to plaintiffs, who forwarded them to Pabst, which in turn delivered the product directly to the distributors.

In September 1999, however, Pabst terminated the arrangement. Since, as plaintiffs now concede, the arrangement, at the time the parties entered into it, was at best a contract-at-will governed by New York law, either side would ordinarily have had the right to terminate the contract at any time for any reason. *See, e.g., Haines v. City of New York,* 41 N.Y.2d 769, 772–73, 396 N.Y.S.2d 155, 364 N.E.2d 820 (1977). Plaintiffs, however, contend that the 1996 enactment of § 55–c of the Alcoholic Beverage Control Law converted this arrangement into a contract requiring good cause for termination. In particular, subsection 4(a) of § 55–c prohibits a "brewer" from cancelling "an agreement" with a beer "wholesaler" except upon "good cause."

Pabst clearly qualifies as a "brewer" under § 55–c, and plaintiffs, by virtue of their marketing and promotional activities for Pabst, meet the statute's definition of a beer "wholesaler," *i.e.* "the holder of a wholesaler's license ... who purchases, offers to sell, resells, *markets, promotes,* warehouses or physically distributes beer sold by a brewer." § 55–c(2)(d) (emphasis supplied). However, the "good cause" requirement of subsection 4(a) does not apply to every arrangement between a brewer and a beer wholesaler, but only to an arrangement that constitutes an "agreement," which under § 55–c is a specially defined term. Specifically, "[a]greement means any contract, agreement, arrangement, course of dealing or commercial relationship between a brewer and a beer wholesaler pursuant to which a beer wholesaler is granted the right to purchase, offer for sale, resell, warehouse or physically deliver beer sold by a brewer." § 55–c(2)(a).

On its face, this definition does not extend to an agreement simply to market or promote a beer, as here involved. That this exclusion is intentional, moreover, is made apparent by the fact that the definition of "agreement" exactly tracks the statutory list of activities that define a

"wholesaler" *except* for "markets" and "promotes," which are included in a wholesaler's activities but excluded from the list of covered agreements. In other words, while the role of a "wholesaler" in the beer industry may include, *inter alia,* marketing and promotional activities, termination of such activities is not among those specifically protected by the "good cause" requirements of § 55–c.

Plaintiffs respond that their arrangement with Pabst nonetheless fits within the coverage of subsection 4(a) because their activities involved the right to "offer for sale" Pabst product. It follows from the previous analysis, however, that a covered agreement that involves the right to offer beer for sale must mean something different from simply marketing or promoting the beer. In the context of a protected contractual arrangement, it logically means an agreement between the brewer and the wholesaler that gives the latter the right to make a legally binding offer to sell the brewer's product to prospective purchasers. Plaintiffs, however, had no such authority; nor, more generally, did any of their activities reasonably fit within any reasonable definition of "offer for sale" that excludes mere promotion or marketing. Thus, at his deposition on May 19, 2000, Thompson testified that while he had forwarded orders for Pabst beer from distributors to Pabst, he never bought beer from Pabst for resale to distributors, never stored, delivered, or set prices for the beer, and never invoiced distributors for the beer they had purchased. Dep. of Albert Thompson at 75–77. At most, plaintiffs, in addition to promoting Pabst product, may have taken certain ministerial steps to help facilitate resultant sales; but none of plaintiffs' activities can reasonably be characterized as making legally binding offers for sale of Pabst beer, let alone having authority from Pabst to do so.

While defendants raise a number of other colorable defenses, the foregoing is sufficient to dispose of the case. Accordingly, the Court grants defendant's motion for summary judgment, denies plaintiff's cross-motion, and dismisses the complaint with prejudice. Clerk to enter judgment.

SO ORDERED.